## Ford and Baines *v.* J. G. McGehee *et al.*

Where a trustee sells trust property to a stranger, who has no knowledge of his trust character, the stranger may acquire title to the property by the acts of the trustee, and hold it discharged from the trust.

A and B, administrators, sold a slave of their intestate to C, who failed to pay the purchase money. The slave was levied on and sold by virtue of an execution against C, and was bought by D. A and B, the administrators who originally sold the slave, were present at the sale. One of them urged D. to buy the slave, and told him the title would be good, in consequence of which D bought the slave. A and B then filed their bill as administrators, to enforce the statutory lien on the slave for the payment of the purchase money. Held by the court, that D held the slave discharged of the statutory lien, in consequence of the fraudulent acts of the administrators.

THE CHANCELLOR.

The complainants, as the administrators of David Ford, deceased, seek to enforce the lien or statutory mortgage which the law gives them for the purchase money upon a slave which they sold as the property of their intestate, to one James McGehee, and which subsequently passed into the hands of the defendant Hoskins. It appears from the testimony that the slave in question was sold as the property of McGehee after he became the purchaser by virtue of a judgment and execution against him, at which sale Malcom D. Haynes became the purchaser, who subsequently sold to the defendant Hoskins. It is also proven that at the time of the execution sale both the complainants were present, and that one of them encouraged Haynes to become the purchaser of said slave, assuring him that he would get a good title; and that Haynes purchased upon the faith of these representations; that no mention whatever was made by either of the complainants in regard to the lien now set up. The defendant Hoskins insists that under these circumstances the complainants are estopped from asserting their statutory mortgage or lien. The

correctness of this position is the only question presented for decision.

No principle strikes me as more consonant to justice, than that one who is acquainted with his rights, and who stands by and permits another to purchase property to which he has a claim, without disclosing his title, shall not be allowed afterwards to disturb the title of one whom he has thus tacitly deceived. But the rule is much stronger where a party not only conceals his claim, but actively encourages another to buy property offered at public sale with an assurance that a good title would be obtained. It is believed that no case can be found where a party under such circumstances would be permitted to set up title in himself against the purchaser whom he had thus duped into an expenditure of his money. To suffer it would be to offer a reward to fraud and dishonesty.

In the case of Brinkerhoff *v.* Lansing, 4 John. Ch. R. 65, it was held that where a prior incumbrancer whose mortgage is not registered witnesses a subsequent conveyance, knowing its contents, and does not disclose his own incumbrance, but intentionally suffers the party dealing with his debtor to remain in ignorance, or encourages such dealing, such prior incumbrance will be barred. The counsel for the complainant do not seem to dispute the general rule, when applied to persons acting *sui juris*, but insist that it has no application to persons claiming in a fiduciary or trust capacity. The position that a trustee can do no act to prejudice the trust fund, is only true as between the trustee and *cestui que trust*. A different rule prevails where a trustee deals with a stranger who has no knowledge of his trust character. In that case the stranger may acquire title to the property by the acts of the trustee, and hold it discharged from the trust. Springle and Bobbs' heirs *v.* Morrison, 3 Littell, 55; 4 Munroe, 196.

From this view of the case, I am of opinion that the complainants' bill be dismissed at their costs, and have signed a decree accordingly.